# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0311, State of New Hampshire v. Dana Anderson, the court on November 15, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. See Sup. Ct. R. 20(2). The defendant, Dana Anderson, appeals his conviction by a jury for criminal restraint, arising out of a domestic dispute with his girlfriend. See RSA 633:2 (2016). The defendant was indicted for "knowingly confin[ing] . . . [the victim], unlawfully exposing her to circumstances exposing her to the risk of serious bodily injury, specifically [the defendant] prevented [the victim] from leaving her apartment by blocking the exits with furniture and/or his body while threatening her with a knife." The defendant contends on appeal that the Superior Court (Attorri, J.) erred: (1) by denying his motion to dismiss because there was insufficient evidence of the elements of the charge as alleged in the indictment; and (2) in its instruction to the jury regarding circumstantial evidence. We affirm.

I

Viewed in the light most favorable to the State, the evidence presented at trial was sufficient for the jury to find the following facts. See State v. Zubhuza, 166 N.H. 125, 126 (2014). On or about August 5, 2021, the defendant, while with the victim in her apartment, accused her of having had sex with her ex-husband earlier in the day. The defendant was angry and hostile and the situation escalated quickly. The defendant blocked the front door of the victim's apartment with furniture. The victim then sat in a chair in the kitchen near the rear door of the apartment, which was bolt-locked. The defendant followed the victim into the kitchen and sat in a chair approximately five feet away from her. The victim testified that she "couldn't" leave because she "felt very threatened" and if she had tried to leave by the rear door the defendant "was close enough . . . to stop [her]."

While in the kitchen, when the victim would stand the defendant would also stand and put his body in the way to stop her from moving, either with his chest pressing against her or by using his hands. She tried to get past the defendant but he pushed her and punched her in the face and body. When the victim sat in the chair again, the defendant took out his pocketknife, opened the blade, stood over and in front of her, and told her she was "going to die

today." When she stood up, the defendant brought the knife down and cut her hand, causing it to bleed. When the victim tried "to reason with" the defendant not to kill her, he repeated that she was "dying today."

The defendant got a large industrial trash bag from under the kitchen sink, put it on the kitchen table, and said that it "will work," the victim's "body will fit in there." He then took a butcher knife out of a drawer, stood over the victim as she sat in the chair, and held the blade of the knife against her throat. The victim testified that as the defendant "kept pressing harder" with the knife, she "didn't want to move," felt "very helpless," was "really scared," "felt like at any moment, it would be the moment that it would end [her] life," and she "just . . . sat there" and "waited for him to stop."

After the State rested, defense counsel moved to dismiss the indictment, arguing that there was insufficient evidence that the defendant blocked both exits from the apartment, as there was no evidence that the defendant, with his body, prevented the victim from leaving while he was threatening her with a knife. According to defense counsel, "there was no testimony that [the defendant] was blocking [the victim] from leaving while there was a knife to her throat." The trial court disagreed, reasoning that "a fair reading of the indictment" would not limit the allegation that the exit was blocked by the defendant's body "to the actual physical interposition of his body between [the victim] and the door." Because "there was a lot of evidence that [the defendant] was physically proximate to [the victim] such that she felt restrained from going out [the rear door]," the trial court denied the motion to dismiss.

II

The defendant first argues that there was insufficient evidence that the defendant "blocked both exits to the apartment by furniture and/or his body while threatening [the victim] with a knife." He asserts that "[a]llowing the jury to deliberate on that charge on evidence of a means of restraint that was not alleged in the indictment was a material variance that prejudiced [him]," thereby requiring reversal of his criminal restraint conviction. Given that, in instructing the jury, the court "gave a criminal restraint instruction framed by the specific allegations in the indictment," the defendant argues that "there was not sufficient evidence on the criminal restraint charge."

When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>Zubhuza</u>, 166 N.H. at 128. We consider all the evidence and all reasonable inferences therefrom in the light most favorable to the State. <u>Id</u>. The defendant bears the burden of demonstrating that the evidence was insufficient to prove guilt. <u>Id</u>.

2

A defendant is entitled to a plain, fair and full description of the offense charged.  State v. Rousten, 84 N.H. 140, 142 (1929).  The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution of the same cause; and, second, to inform the court of the facts alleged, so it may decide whether they are sufficient in law to support a conviction, if one should be had.  Id.  Any indictment should be considered adequate if it informs the defendant of the nature and cause of the accusation with sufficient definiteness so that he can prepare for trial.  Id. at 143; see State v. Greenwood, 113 N.H. 625, 626 (1973) ("Without compliance with ancient technical rules, the modern indictment simply must allege every element of the offense charged.").

The premise of the defendant's argument is that the indictment required the State to prove that, in addition to blocking the front exit with furniture and/or his body, he placed his body to block the rear exit while threatening her with a knife, thereby preventing the victim from leaving.  However, we agree with the trial court that a fair reading of the indictment did not require that the defendant's body literally block the rear exit, and that there was ample evidence that the defendant's physical proximity to the victim while holding the blade of a butcher knife against her throat restrained her from going out that door.  Further, the indictment identifies the victim, the place and date of the alleged offense, and the overt acts committed, thereby leaving the defendant in no doubt about the offense with which he was charged.  See Greenwood, 113 N.H. at 626; State v. Miner, 122 N.H. 86, 87-88 (1982).  Accordingly, the defendant was sufficiently apprised of the factual basis of the indictment so that he could prepare his defense.  See Greenwood, 113 N.H. at 626; Miner, 122 N.H. at 87-88; see also State v. French, 146 N.H. 97, 104 (2001) (explaining that the question is whether an indictment "contains the elements of the offense and enough facts to warn the defendant of the specific charges against him" (quotation omitted)).  As set forth above, viewing the evidence in the light most favorable to the State, we conclude that there was sufficient evidence upon which a rational trier of fact could have found beyond a reasonable doubt that the elements of the charge as alleged in the indictment were met.

The defendant next argues that the court erred in its instruction to the jury regarding circumstantial evidence.  We conclude, however, that this issue was not preserved for appellate review.  As a general rule, a contemporaneous objection is necessary to preserve a jury instruction issue for appellate review.  State v. Nightingale, 160 N.H. 569, 577 (2010).  This requirement affords the trial court an opportunity to correct an error it may have made and is particularly fitting when an alleged error involves a jury instruction.  Id.  This long-standing requirement is grounded in common sense and judicial economy.  Id.  To preserve a jury instruction issue for our review, counsel must do more than merely submit proposed instructions to the trial court, debate possible

3

instructions with the trial court, or object generally to the admissibility of the evidence itself.  Id.  Rather, counsel must actually make a specific objection to the court's jury instructions.  Id.

The record shows that at the conclusion of the evidence, the trial judge indicated to counsel that he was planning on "giving the standard instructions" to the jury the following day and, given that "the evidence in the case [was] mainly direct evidence from [the victim]," while he "hadn't been thinking about giving a circumstantial evidence instruction," he would "hear [counsel] on that."  The judge indicated that "unless somebody want[ed] to submit a proposed instruction," he thought that instructing the jury that they are to consider "all the evidence in the case [was] adequate."  The judge explained that he wanted to stay away "from that part of [the model] instruction that talks about it's got to be sufficient to exclude all other possibilities, because that . . . has some utility in a case where all of the evidence is circumstantial" but is "very confusing where it's a mixed evidence case."

Defense counsel "disagree[d]," arguing that, in cases where there is direct and circumstantial evidence, the defendant was entitled to an instruction that explains "what is to be considered direct evidence and what is to be considered circumstantial evidence" and "the jury is allowed to make their own inference."  The trial judge responded that he would give that instruction but would "not give the [model] instruction on circumstantial evidence, which has a stand-alone paragraph."  Defense counsel said she "[u]nderstood" and emphasized that she wanted the court to explain the difference between direct and circumstantial evidence and that the jury makes that determination.  The court agreed and explained that it was "going to give an amended form of the [model jury instruction], not the draft instruction."  Defense counsel replied that she would "have to take a look at that."

Referring to the 2010 model jury instructions, the court explained that it would give the first paragraph, and the first two sentences of the second paragraph but was "not inclined to give" the rest of the paragraph "because of the mixed nature of the evidence here."  Defense counsel stated that she thought "it would be certainly unfair to eliminate that portion of the instruction."  The trial judge explained that he would "think about that" but that he was going to "either omit the last part of the middle paragraph, starting with however, or [he would] modify it."  At the close of the discussion, the trial judge stated that counsel had "given [him] plenty to think about" that night.

The next morning, prior to closing arguments, the trial court gave counsel an opportunity to review the final jury instructions.  Neither the State nor the defendant raised any objections.  After the trial court instructed the jury, when asked in a sidebar if there was "[a]nything that counsel would like to put on the record," defense counsel replied "No."

Based on the record, we determine that defense counsel "never formalized an objection" to the final jury instruction. Berliner v. Clukay, 150 N.H. 80, 84 (2003); see N.H. R. Crim. P. 24(b)(9)(B) ("The court shall inform counsel of its intended jury instructions prior to counsel's closing arguments. All objections to the charge shall be taken on the record before the jury retires."). Although, during discussion with the trial court the prior day about a not-yet-prepared instruction, defense counsel expressed a general concern about modifying the model jury instruction, "[a] chambers discussion directed at persuading the court to craft or utilize a proposed instruction, without more, . . . does not constitute a 'specific, contemporaneous objection.'" Berliner, 150 N.H. at 84. When given the opportunity to review the actual instruction as modified, defense counsel raised no objection. The argument raised on appeal is, therefore, not preserved. See id.; see also State v. Thaxton, 122 N.H. 1148, 1152 (1982) (where the defendant failed to make a specific objection upon which the trial court could either correct any error it had made or rule, thereby giving the defendant an opportunity to preserve his exception, the issue was not properly preserved for appeal).

Affirmed.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

5